UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB,<br><br>    Plaintiff,<br><br>    v.<br><br>STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency,<br><br>    Defendant. | Civil Action No. 08-1545 (CKK) |

MEMORANDUM OPINION
(June 8, 2009)

   Plaintiff Sierra Club has brought this action against Defendant Stephen L. Johnson, the Administrator of the United States Environmental Protection Agency, alleging that Defendant has violated his obligation to issue or deny an operating permit for the Hugh L. Spurlock Generating Station in Maysville, Kentucky (the "Spurlock facility"). Currently pending before the Court is Defendant's [9] Motion to Dismiss or, in the alternative, [10] Motion to Transfer, based on the specific venue provisions in the Clean Air Act that limit the possible venues in which Plaintiff may assert one of the three claims raised in its Complaint. After a searching review of the parties' submissions, applicable case law and statutory authority, and the entire record of the case as a whole, the Court agrees with Defendant that Plaintiff has brought this case in an improper venue. Accordingly, the Court shall GRANT Defendant's [10] Motion to Transfer and, in the Court's discretion, shall order this case to be transferred to the Eastern District of Kentucky, for the reasons that follow.

# I. BACKGROUND

*A.     Statutory and Regulatory Background*

The Clean Air Act, 42 U.S.C. §§ 7401, *et seq.* ("CAA"), is intended "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare . . . ." *Id.* § 7401(b)(1). The CAA establishes a comprehensive program for the regulation of air pollution through a system of shared federal and state responsibility. At the federal level, the Administrator of the Environmental Protection Agency ("EPA") is responsible for directing the activities of the EPA and implementing certain requirements set forth in the CAA. *Id.* § 7402(b), 7661d. At the state level, the CAA delegates to each state the obligation and authority to develop an operating permit program that complies with the emissions and regulatory requirements set forth in the Act. *Id.* § 7661a(d)(1). In this case, the EPA has approved Kentucky's operating permit program, pursuant to which the authorized permitting authority is the Kentucky Division of Air Quality ("KDAQ"). *See* 66 Fed. Reg. 54,953 (Oct. 31, 2001).

Title V of the CAA establishes the procedure for processing air pollution permit applications and the issuance of permits by the state. Specifically, 42 U.S.C. § 7661d(a) requires that state permitting authorities submit each proposed permit to the Administrator of the EPA for review. If the Administrator does not object to a deficient permit during the statutory period, any person may petition the Administrator to object to the Title V permit. 42 U.S.C. § 7661d(b)(2). The Administrator must then grant or deny the petition. *Id.*

If the Administrator objects to the proposed permit because of non-compliance with the applicable requirements of the CAA, the state permitting authority must submit a permit that has been "revised to meet the objection" for further review by the EPA within 90 days of the

Administrator's objection. 42 U.S.C. § 7661d(c). If the state permitting authority fails to timely submit a revised permit proposal, "the Administrator shall issue or deny the permit in accordance with the requirements of [Title V]." *Id.* § 7661d(c). It is this last requirement that is at issue in this case.

The CAA contains several citizen suit provisions. A person may bring an action "where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary . . . ." *Id.* § 7604(a)(2). The Act provides that such an action may be brought in *any* district court. *Id.* § 7604(a) (emphasis added). The CAA also authorizes a person to bring suit to compel performance of "agency action unreasonably delayed." *Id.* Unlike claims brought to compel an act or duty that is not discretionary, the CAA requires "unreasonably delayed" claims to be brought in a specific venue:

> [t]he district courts of the United States shall have jurisdiction to compel . . . agency action unreasonably delayed, except that an action to compel agency action referred to in [42 U.S.C. § 7607(b)] which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under [42 U.S.C. § 7607(b)].

*Id*; *see also* 42 U.S.C. § 7606(b)(1) (allocating petitions for certain "locally or regionally applicable" actions of the EPA to "the appropriate circuit").

B. *Factual Background*

Sierra Club is a non-profit organization whose purpose is to "preserve, protect, and enhance the natural environment."[1] Compl. ¶ 3. Plaintiff has over 800,000 members nationwide, including members who live around and are affected by the Spurlock facility:

---

[1] These facts are drawn from the well-pleaded factual allegations in Sierra Club's Complaint, which the Court shall accept as true for purposes of the present motion. *See Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).

> Plaintiff's members live, work, and recreate around the Spurlock facility in Maysville, Kentucky. Plaintiff's members breathe, use and enjoy the ambient air around the area of Maysville, Kentucky. Their health and use of the air is impaired by the pollution in the air caused by the Spurlock facility in Maysville. The Spurlock facility emits hazardous air pollutants which negatively impact Plaintiff's members.

*Id.* at ¶ 4.

On August 15, 2006, Plaintiff petitioned Defendant to object to a Title V permit for the Spurlock facility proposed by KDAQ, the authorized state permitting authority for facilities in Kentucky. *Id.* ¶ 13. On August 30, 2007, Defendant objected to the permit issued by KDAQ on account of non-compliance with CAA requirements. *Id.* KDAQ submitted a revised proposed permit to Defendant on March 5, 2008. *Id.* ¶ 16. As of September 5, 2008, Defendant had not made any determination with respect to the revised Title V permit proposal, and had not issued a Title V permit for the Spurlock facility. *Id.* ¶ 24, 31.

### C. Procedural Background

Plaintiff filed this lawsuit on September 5, 2008, asserting three claims for relief. *Id.* at ¶¶ 18-36. Count I alleges that Defendant failed to perform a mandatory duty by failing to issue or deny a Title V air pollution operating permit for the Spurlock facility. Compl. ¶¶ 19, 23-25, 26. Count II, which is pled in the alternative, alleges that Defendant unreasonably delayed its decision to issue or deny the Title V permit. *Id.* ¶¶ 28-32. Count III seeks a declaratory ruling that Defendant must issue or deny the permit for the Spurlock facility. *Id.* ¶¶ 33-36.

Defendant filed a Motion to Dismiss or, in the Alternative, Motion to Transfer, arguing that the District of Columbia is an improper venue for Count II of Plaintiff's Complaint and that this case should either be dismissed or, in the Court's discretion, transferred to the Eastern District

of Kentucky (the judicial district in which the Spurlock facility is located). In Opposition, Plaintiff argues that a transfer of this case is unwarranted and that the Court should exercise "pendent venue" over Count II of the Complaint even if venue is otherwise improper. Defendant also filed a Reply in support of its Motion. Accordingly, Defendant's Motion is fully briefed and ripe for decision.

## II. LEGAL STANDARD

*A. Motion To Dismiss, Fed. Rule of Civ. P. 12(b)(3)*

Defendant argues that the District of Columbia is an improper venue for this case and that it should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002). Nevertheless, a plaintiff "bears the burden of establishing that venue is proper." *Varma v. Gutierrez*, 421 F. Supp. 2d 110, 113 (D.D.C. 2006) (internal quotations omitted). *See also Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) ("[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper").[2]

*B. Motion to Transfer, 28 U.S.C. § 1406(a)*

---

[2] Citing a variety of cases from other judicial districts, Plaintiff argues that some courts "have held that the defendant, as the party challenging venue, bears the burden" of demonstrating that a venue is improper. Pl.'s Opp'n at 3-4. As reflected in the cases cited above, that is not the law in this district, which places the burden on Plaintiff to demonstrate that the forum it has selected is an appropriate one. In any event, for the reasons set forth below, the Court would find the District of Columbia to be an improper venue for Count II of Plaintiff's Complaint regardless of the party carrying the burden.

Defendant alternatively argues that, if the Court does not dismiss Plaintiff's Complaint in its entirety, then it should exercise its discretion to transfer the case. Pursuant to 28 U.S.C. § 1406(a), when a case is filed in the wrong federal judicial district, the district court in which the action is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In considering a motion to dismiss for lack of venue, "unless contradicted by an evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, 04-1733, 2006 U.S. Dist. LEXIS 44399 at *4 (D.D.C. Jun. 29, 2006) (citations and internal quotations omitted). Pursuant to 28 U.S.C.§ 1406(a), the decision whether to transfer or dismiss "rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) (citations omitted).

### III. DISCUSSION

There is no dispute that the District of Columbia is a proper venue for Counts I and III of Plaintiff's Complaint, both of which may be heard in this district pursuant to the general venue provision in 28 U.S.C. § 1391. The parties' sole dispute concerns whether Count II (Plaintiff's "unreasonable delay" claim) is properly asserted in this district given the specific venue provisions in the CAA:

> [t]he district courts of the United States shall have jurisdiction to compel . . . agency action unreasonably delayed, except that an action to compel agency action referred to in [42 U.S.C. § 7607(b)] which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under [42 U.S.C. § 7607(b)].

6

42 U.S.C. § 7604(a).  This provision interacts with Section 7607(b), the CAA's judicial review provision, creating a sort of venue dichotomy, whereby the appropriate venue depends on whether the issue is regional or national in scope:

> [a] petition for review of…any other final action of the Administrator under this Act…which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.  Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

42 U.S.C. § 7607(b)(1).  The D.C. Circuit has explained that these venue provisions are intended "to place nationally significant decisions in the D.C. Circuit," while localized controversies remain in the affected regions.  *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996).[3]

Based on these venue provisions, a claim seeking to compel unreasonably delayed agency action may be brought only in a district court in the appropriate circuit where the action is to be performed, unless the action involves an issue of nationwide scope or effect.  As such, the critical determination for purposes of Defendant's Motion is whether the issuance or denial of a Title V permit to the Spurlock facility would constitute an action that is "locally or regionally applicable" (and is judicially reviewable only in the Sixth Circuit) or whether it constitutes an action that has a "nationwide scope or effect" (and is judicially reviewable only in the District of Columbia).

---

[3] The Court notes that Section 7607(b)(1) is a venue and not jurisdictional provision.  *See Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996) (holding this provision to "be read as prescribing the choice among circuits and not the power of a particular federal circuit court to hear a claim").

The few courts that have engaged in this type of inquiry have not set forth a unitary standard for doing so. On the one hand, certain actions are clearly nationally applicable, such as the issuance of an EPA regulation that applies uniformly nationwide. *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. Costle*, 647 F.2d 675, 677 (6th Cir. 1981) (finding a nationwide regulation concerning vehicle emission system manufacturers to be a nationwide issue). On the other hand, certain types of actions are clearly regionally applicable, such as an EPA determination that applies promulgated standards to a particular facility. *See Harrison v. PPG Indus.*, 446 U.S. 578, 586 (1980) (finding an EPA determination concerning the applicability of emissions standards to a specific power facility to be local in scope); *Illinois EPA v. EPA*, 947 F.2d 283, 288-89 (7th Cir. 1991) (finding the denial of a supplemental grant application to be regionally applicable). Significantly, a court's inquiry should focus on the *subject* of the regulation, and not on its speculative *effects*. *See Natural Res. Def. Council v. Thomas*, 838 F.2d 1224, 1229 (D.C. Cir. 1988) (holding that a determination of venue "turn[ing] on the *de facto* scope of the regulation . . . might raise complex factual and line-drawing problems" that "would waste time and serve little purpose"). *See also New York v. EPA*, 133 F.3d 987, 989-90 (7th Cir. 1998) (holding that a court's inquiry "should depend on the location of the persons or enterprises that the action regulates" because an alternative inquiry based on the scope of the effect would be vague and unworkable). *Id.*

On the facts of this case, the Court has little difficulty concluding that the issuance or denial of a Title V permit by Defendant to the Spurlock facility is an action of local or regional applicability. This claim concerns a single power plant in Kentucky. Compl. ¶ 2. There are no allegations that the decision to grant or deny the operating permit would necessarily affect similar

8

facilities nationwide, nor anything to suggest that the permit determination would be based on nationwide considerations. The allegations in Plaintiff's Complaint even underscore its local focus:

> Plaintiff's members live, work, and recreate around the Spurlock facility in Maysville, Kentucky. Plaintiff's members breathe, use and enjoy the ambient air around the area of Maysville, Kentucky. Their health and use of the air is impaired by the pollution in the air caused by the Spurlock facility in Maysville. The Spurlock facility emits hazardous air pollutants which negatively impact Plaintiff's members.

*Id.* at ¶ 4.

Plaintiff's perfunctory arguments in Opposition do not alter this local focus. For example, Plaintiff argues that the effect of Defendant's permitting decision is not yet known and, therefore, it is "too soon" to make a determination with respect to venue. *See* Pl's Opp'n at 10, 12. This argument suggests that the Court should not assess the proper venue for Plaintiff's unreasonable delay claim until *after* Defendant has made the permitting decision at issue. If the Court were to accept that argument, the venue question – and the unreasonable delay claim itself – would illogically be rendered moot. *See* Def's Rep. at 5. Plaintiff also argues that emissions from Kentucky power plants interfere significantly with ambient air quality in downwind states, thereby implying a more nationwide focus. *Id.* at 11 (citing a 2005 EPA finding). The Court agrees that pollution may, in some instances, affect more than a single state, and that such issues may, in some cases, be addressed through nationwide regulations or other nationwide actions. But Defendant's decision to grant or deny an operating permit to one plant in Kentucky does not fit those facts. This is particularly so because the Court is unwilling to engage in speculation regarding the *de facto* effect of the Spurlock facility permitting decision – an inquiry that is more

appropriately resolved by Defendant and not the judiciary. *Cf. Nat. Res. Def. Council*, 838 F.2d at 1229. For these reasons, the Court finds that Defendant's determination to grant or deny the Spurlock facility operating permit is an issue of local or regional scope and that Plaintiff's unreasonable delay claim (Count II) must be brought in a district court within the Sixth Circuit, and not in this Court.

Anticipating that the Court may find Count II subject to improper venue in this district, Plaintiff argues that this Court should nevertheless apply the doctrine of "pendent venue" over this claim. *See* Pl.'s Opp'n at 12-17. This doctrine is similar to the concept of supplemental jurisdiction, providing an exception to the traditional rule that venue must be appropriate for each claim asserted by a plaintiff. *See Bartel v. FAA*, 617 F. Supp. 190, 197 n.31 (D.D.C. 1985). Pursuant to pendent venue, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued *and* the interests of judicial economy are furthered by hearing the claims together. *See Beattie v. United States*, 756 F.2d 91, 102-03 (D.C. Cir. 1984), *abro'd on other grounds by, Smith v. United States*, 507 U.S. 197 (1993).

In this case, the Court rejects Plaintiff's argument that the Court should exercise pendent venue because that doctrine is inconsistent with the specific venue provisions of the CAA, 42 U.S.C. §§ 7604(a), 7607(b)(1). Where a special venue provision places venue in a specific district, such a provision controls venue for that claim, even where it arises from a common nucleus of operative fact as a properly situated claim. *See, e.g.*, *Jyanchosky*, 2006 U.S. Dist. LEXIS 44399 at *13 n.3 (refusing to invoke the doctrine of pendent venue to avoid the statutory venue requirements of Title VII); *Boggs v. United States*, 987 F. Supp. 11, 18-19 (D.D.C. 1997)

(rejecting pendent venue over Federal Tort Claims Act because doing so would circumvent congressional intent to limit where such claims could be heard); *Bartel*, 617 F. Supp. at 198 n.33 (rejecting pendent venue because the Court "lacks the authority to ignore the congressional intent to limit venue" and must abide by such restrictions, despite the presence of related claims properly situated under the general venue statute). Accordingly, the Court finds that application of pendent venue over the unreasonable delay claim is inappropriate given Congress's clear intent to limit the districts in which such claims may be heard.

Having determined that venue is improper as to Count II and that pendent venue is inappropriate, the Court may either dismiss this action or, in the interest of justice, transfer the case to a district where venue would be proper. 24 U.S.C. § 1406(a). *See also Modaressi*, 441 F. Supp. 2d at 53. "The decision whether a transfer or dismissal is in the interest of justice . . . rests within the sound discretion of the [C]ourt," *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983), but "[g]enerally, the 'interest of justice' instructs courts to transfer cases to the appropriate judicial district rather than dismiss them," *James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 20 (D.D.C 2002).

The Court shall exercise its discretion to transfer rather than dismiss this case.[4] The Court finds that this course of action promotes fairness, convenience to the parties, and judicial economy. The Court also finds that transferring all of the claims to the same forum assures that

---

[4] Although two of Plaintiff's claim are otherwise subject to proper venue in the District of Columbia, courts in this district have consistently transferred an *entire* case to another judicial district, rather than bifurcate the litigation. *See, e.g.*, *Saran v. Harvey,* Civ. A. No. 04-1847, 2005 U.S. Dist. LEXIS 8909 at *12 (D.D.C. May 9, 2005). The Court finds that transferring the entire case is particularly appropriate here because both parties agree that the three counts in Plaintiff's Complaint should be heard together. *See* Pl's Opp'n at 13; Def.'s Reply at 9 n.3.

11

they will be heard together, preventing the unnecessary expenditure of judicial and party resources that would otherwise occur if the claims were heard in multiple judicial districts.

Although Plaintiff proffers certain facts that it believes weigh against the transfer of this action, none are meritorious. For example, Plaintiff argues that its counsel has not been admitted to practice before the district court of the Eastern District of Kentucky, the most appropriate district to hear this case. *See* Pl's Opp'n at 16. This argument is of little persuasive value because Plaintiff fails to explain why its counsel could not simply appear *pro hac vice* in that forum. Nor would this be a reason to keep an otherwise improperly venued case in this district. Plaintiff also argues that this case is dominated by actions and omissions that occurred at Defendant's headquarters in the District of Columbia and involves EPA documents and witnesses located in the District. *Id.* at 17. Even if the Court were to fully credit Plaintiff's view of the witness and document locations, the argument has little merit; through advances in modern technology, people and documents may move from one location to another with relative ease. The Court therefore finds that a transfer of this case pursuant to 28 U.S.C. § 1406(a) to an appropriate district is warranted.

While any district court within the Sixth Circuit is a potentially proper venue under 42 U.S.C. §§ 7604(a), 7607(b)(1), the Eastern District of Kentucky appears to be the most appropriate. This case involves issues local to Kentucky and directly affects Plaintiff's members living in the areas surrounding the Spurlock facility, which is located in the Eastern District of Kentucky. The Court finds that the public interest would be promoted by deciding this local controversy at home. *Cf. National Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 50 (D.D.C. 2006) (finding that litigation under the Endangered Species Act would best promote the interests

of justice if resolved in the geographic regions with the largest stake in its outcome). Plaintiff does not assert that there is a more appropriate forum to which this action should be transferred. Accordingly, the Court shall exercise its discretion to transfer this entire case to the Eastern District of Kentucky.[5]

## CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [10] Motion to Transfer this case to the Eastern District of Kentucky. An appropriate Order accompanies this Memorandum Opinion.

Date: June 8, 2009

                                                     /s/
                                             **COLLEEN KOLLAR-KOTELLY**
                                             United States District Judge

---

[5] The last paragraph of Plaintiff's Opposition implies that Plaintiff would consider amending its Complaint to eliminate Count II (thereby allowing Plaintiff to potentially raise Count II in a different forum while litigating Counts I & III in this forum). *See* Pl.'s Opp'n at 23. Plaintiff did not so move, and even if it had, such a motion would be inconsistent with the practical reality that Plaintiffs' claims, as alternative avenues for relief, should be heard in the same forum.